UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MEKNAT MOHAMMAD,
A-045-647-634,

    Petitioner,

  v.

CHRISTOPHER CHESTNUT, et. al.,

    Respondents.

No.  1:26-cv-01139-DAD-DMC-HC

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee proceeding with counsel, filed an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. See ECF No. 11. Respondents filed an answer, ECF No. 13, and Petitioner filed a reply, ECF No. 14.

## I. BACKGROUND

Petitioner contends that he is a citizen of Iran, was granted lawful permanent resident status around 1997, which was revoked in 2013 due to Petitioner's criminal convictions. See ECF No. 11, pg. 4. Petitioner asserts that the government was unable to remove Petitioner because Iran would not issue travel documents for Petitioner, and the government therefor released Petitioner. See id. Petitioner was detained on January 8, 2026, "following completion of a criminal sentence." Id. Petitioner argues that his detention violates his due process rights because his detention is governed by § 1231 and Petitioner's removal is not significantly likely in

1

the reasonably foreseeable future. See id. at 6-7. Next, Petitioner asserts that his detention violates his due process rights because there has been "no meaningful neutral determination" as to viability of Petitioner's removal nor whether Petitioner's continued detention "is justified." Id. at 7. Finally, Petitioner asserts his "'serial' post-order re-detention" violates Petitioner's due process rights because there is no "identified material change that makes removal realistically achievable." Id. at 8.

Respondents argue that, at the time the answer was filed, Petitioner was only detained for three months, "far short of the presumptively reasonable six months that courts have previously held." ECF No. 13, pg. 1. Respondents contend that Petitioner's detention is governed by § 1231 because he is subject to a final order of removal and Petitioner was detained "after being released from a prison sentence for even yet another crime." Id. Respondents argue that "[i]f ICE had travel documents ready for the petitioner in this instant, Petitioner would have no grounds to challenge his mandatory detention in preparation for removal." Id.

On May 18, 2026, the undersigned issued an order to show cause directing Respondents to show cause why the undersigned should not recommend granting the petition for failure to provide Petitioner the process required by 8 C.F.R. § 241.13(i)(3) and failure to demonstrate significant likelihood of Petitioner's removal in the reasonably foreseeable future. See ECF No. 15. Respondents filed a response, ECF No. 16, Petitioner filed a reply, ECF No. 18, Respondents filed a status report, ECF No. 19, and Petitioner filed a supplemental traverse, ECF No. 20.

In the response to the order to show cause, Respondents state that Petitioner was provided the process required by § 241.13(i)(3) when Petitioner was given a custody review on May 21, 2026. See ECF No. 16. On June 8, 2026, Respondents filed a status report informing the Court that ICE spoke with the Iranian Embassy "regarding Petitioner's travel documents. The Iranian Embassy did not refuse to provide Petitioner travel documents and is currently undertaking its own internal verification process to confirm that Petitioner is reflected in their records as an Iranian national." ECF No. 19, pg. 1. Respondents stated that they are "unable to confirm exactly when the Iranian Embassy will complete its verification process and issue the

travel documents," and therefore request that, "[i]f the Court were to order Petitioner's release before the Iranian Embassy can furnish Petitioner's travel documents, Respondents respectfully request that the Court craft its release order to permit ICE ERO to re-detain Petitioner immediately upon receipt of travel documents from the Iranian Embassy." Id.

In reply, Petitioner maintains that "[t]he May 21 letter is not the process required by § 241.13(i)(3)," because "it does not establish that ICE gave contemporaneous notice of revocation reasons or provided the interview-based opportunity to contest them . . ." ECF No. 18, pgs. 1-3. Further, Petitioner argues that "Respondents still cannot provide a realistic, evidence-based timeline demonstrating a significant likelihood of removal in the reasonably foreseeable future." ECF No. 20. Petitioner contends that "show[ing] that ICE has asked for documents and is waiting," does not establish a likelihood of removal in the reasonably foreseeable future. Id. at 3. Finally, Petitioner challenges Respondents' request that any order from the Court allow Petitioner's immediate re-detention upon obtaining travel documents as "overbroad and unnecessary." Id. at 4. Petitioner contends that, if travel documents for Petitioner are issued and "Respondents believe removal has become imminent, Respondents can pursue custody actions consistent with the Constitution, statutes, and applicable regulations, including providing any required notice and process." Id.

## II. DISCUSSION

The undersigned finds Petitioner is entitled to relief as his detention has exceeded six months and Petitioner has shown there no significant likelihood of his removal in the reasonably foreseeable future, which Respondents fail to rebut. Further, Petitioner established that the revocation of his release did not comply with the statutory requirements of § 241.13(i) and will therefore recommend the petition be granted and Petitioner be released immediately. Finally, Respondents timely filed a response to the undersigned's order to show cause, ECF No. 16, and the undersigned will therefore discharge the order to show cause.

///

///

**A.    _Zadvydas_ Claim**

When the Government wants to remove a noncitizen,[1] the normal path is through removal proceedings, which require an evidentiary hearing before an immigration judge. 8 U.S.C. § 1229(a). After a noncitizen is ordered removed, ICE "shall remove the alien from the United States within a period of 90 days . . . ." (the "removal period"). 8 U.S.C. § 1231(a)(1)(A). The removal period begins, as relevant here, on the "date the order of removal becomes administratively final." Id. § 1231(a)(1)(B)(i). ICE is required to detain the noncitizen during the removal period. § 1231(a)(2). If the noncitizen is not removed during the removal period, ICE "may" continue to detain the noncitizen after the removal period if he falls into certain categories, including that he entered "the United States without being admitted or paroled," or arrived "in the United States at any time or place other than as designated by the Attorney General."  §§ 1231(a)(6), 1182(a)(6)(A)(i). Although there is no explicit statutory limit to the period for which a noncitizen may be detained following the removal period, in Zadvydas the Supreme Court noted that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Accordingly, the Supreme Court held that after a presumptively reasonable six-month period of post-removal period detention,

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Here, Petitioner was detained January 8, 2026, and therefore has been in detention for over six months. Further, Petitioner was previously detained in 2013, when his order of removal became final, and Petitioner "has also reported additional prior detention episodes after

---

[1] The court prefers the term "noncitizen" to "alien." Because the regulatory language at issue frequently uses the term "alien," the court will use the terms interchangeably in this order.

the final order—each lasting approximately three months—followed by release. Petitioner has understood those releases to be connected to ICE's inability to complete removal to Iran." ECF No. 11, pg. 4. Respondents do not dispute Petitioner's claim that he has been repeatedly detained after his order of removal became final. See ECF Nos. 13, 16, and 19. Judges within the Ninth Circuit have found that, based on Ninth Circuit application of Zadvydas, the petitioner's time in detention does not reset after every release. See Vuong Nguyen v. Andrews, No. 1:26-cv-00015-DAD-SCR, 2026 LX 50494, at *4-5 (E.D. Cal. Feb. 13, 2026) (citing Nguyen v. Scott, 796 F. Supp. 3d 703, 722 (W.D. Wash. 2025) (collecting cases)). Regardless or whether Petitioner's prior time in detention is included in the calculation, Petitioner has been detained for longer than six months. Thus, the undersigned finds that Petitioner's detention has exceeded the "presumptively reasonable" six-month period of post-removal detention.

Next, the undersigned finds that the petition "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," Zadvydas, 533 U.S. at 701, because Iran has previously declined to issue travel documents for Petitioner and there are no valid travel documents for Petitioner now, see ECF No. 11, pgs. 4-5. Respondents attempt to rebut that showing by stating that "the Iranian Embassy did not refuse to provide Petitioner travel documents." ECF No. 19, pg. 1. This is insufficient to rebut the showing that there is no significant likelihood of removal in the reasonably foreseeable future. Indeed, Respondents state that Iran is engaging in an "internal verification process," but do not know how long that will take, nor is it clear to the undersigned that Petitioner will be issued travel documents at the conclusion of such process. Thus, the undersigned finds that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future and Petitioner has been detained for longer than six months. Accordingly, the undersigned finds Petitioner is entitled to relief pursuant to Zadvydas and will recommend the petition be granted as to this claim and Petitioner be released with appropriate conditions of supervision.

///

///

///

**B.      Revocation of Release**

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any order of removal. 8 U.S.C. § 1231(a)(1). However, once that time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," the noncitizen must be released. Zadvydas v. Davis, 533 U.S. 678, 699 (2001). Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release. 8 U.S.C. § 1231(a)(3), (6).

The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes revocation of a noncitizen's release for violating conditions of release or purposes of removal, specifically:

> (1) **Violation of conditions of release**.  Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.
>
> (2) **Revocation for removal**.  The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

8 C.F.R. § 241.13(i),

§ 241.13(i) additionally outlines the revocation procedure, which requires: "(1) the noncitizen must be informed of the basis for revocation; (2) the noncitizen must be provided a "prompt" opportunity to present evidence and explain why revocation is not warranted; and (3) if the revocation is discretionary in nature, it must be made by an appropriate official." Esmail v. Noem, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030590, at *2 (C.D. Cal. Sept. 12, 2025) (citing § 241.13(i)(3); § 241.4(l)(2)).

/ / /

/ / /

6

"It is well-established that government agencies are required to follow their own regulations." Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268, 74 S.Ct. 499, 98 L.Ed. 681 (1954); United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010)). In light of this, district courts have found it is appropriate to order the release of immigration detainees when it is determined that ICE violated their own policies when effectuating the detention of a noncitizen. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding petitioner likely to succeed on his unlawful re-detention claim because "there is no indication that an informal interview was provided"); Rombot v. Souza, 296 F. Supp. 3d 383, 387 (D. Mass. 2017)(ordering petitioner's release because "the record does not show" that ICE followed the requirements to revoke release as set forth in § 241.4); Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025) (finding petitioner's due process rights were violated when ICE failed to comply with § 241.4 when revoking petitioner's release due to violations of the conditions of release); Saeid Baniasadi v. Fereti Semaia, No. EDCV 26-01275-MWF(DSR), 2026 WL 851358 (C.D. Cal. Mar. 25, 2026)(ordering a petitioner's release upon finding petitioner is likely to succeed on his claim that the revocation of his release was not in accordance with § 241.4). When the government seeks to revoke the release of a noncitizen subject to § 1231 for removal, but fails to provide the process prescribed in  8 C.F.R. § 241.13(i)(3),  this Court has granted petitions, or afforded injunctive relief, ordering the immediate release of the noncitizen. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771 (E.D. Cal. July 16, 2025); Vuong v. Becerra, 1:25-cv-01847-DC-CSK, 2025 WL 3707172 (E.D. Cal. Dec. 22, 2025).

Here, Petitioner was provided notice of the "decision to continue detention" on May 21, 2026. See ECF No. 16-1. The undersigned notes that Petitioner was only provided such notice after Respondents were ordered to show cause why the petition should not be granted for Respondents' failure to provide Petitioner the process prescribed in 8 C.F.R. § 241.13(i). Moreover, the "Decision to Continue Detention" letter informs Petitioner that "ICE Has determined to maintain your custody because you have no demonstrated that, if released, you will not pose a significant risk of flight pending your removal from the United States." ECF No. 16-1,

7

pg. 2. The letter then provides the reasons for such a determination. See id. The undersigned finds that this does not comply with § 241.13(i)(3) as Petitioner was not "notified of the reasons for revocation of his or her release," as required by statute. Indeed, the letter states that the decision was made "upon review of the factors for consideration set forth in 8 C.F.R. § 241.4(e), (f), and (g)." Id. at 1. Though § 241.4 governs the "[c]ontinued detention of inadmissible, criminal, and other aliens beyond the removal period," Petitioner here was previously released and therefore, revocation of Petitioner's release is governed by § 241.13(i), "[r]evocation of release." Further, there is no evidence that Petitioner was provided "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3). Indeed, even if the letter issued May 21, 2026, provided Petitioner notice of the revocation of his release, such letter was issued over four months after Petitioner was detained. Though the record before this Court may indicate there is a basis for revocation, the undersigned finds Petitioner was not provided the process required by statute to revoke Petitioner's release.

Accordingly, the undersigned will recommend the petition be granted as to Petitioner's claim that Respondents failed to adhere to statutory requirements when revoking Petitioner's release. Respondents request that the Court's order "permit ICE ERO to re-detain Petitioner immediately upon receipt of travel documents from the Iranian Embassy." ECF No. 19, pg. 1. Petitioner opposes such request as "overbroad and unnecessary." See ECF No. 20. The undersigned agrees with Petitioner as relief from this Court should not allow Respondents to circumvent the process required by statute, indeed that is the basis of the undersigned recommending relief. Upon finding Petitioner's detention violated the process prescribed in § 241.13(i), the undersigned will recommend that Respondents be enjoined from re-detaining Petitioner absent strict adherence to § 241.13(i).

/ / /

/ / /

/ / /

/ / /

### III. CONCLUSION

Based on the foregoing, the undersigned recommends and orders:

1. It is ORDERED that Respondents are DISCHARGED from the order to show cause, ECF No. 15;

2. It is RECOMMENDED that the amended petition for writ of habeas corpus, ECF No. 11, be GRANTED;

3. It is RECOMMENDED that Respondents be ORDERED to immediately release Petitioner, MEKNAT MOHAMMAD, A-045-647-634, with appropriate conditions of supervision with all Petitioner's documents and possessions;

4. It is RECOMMENDED that Respondents be ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, strict compliance with the requirements of 8 C.F.R. § 241.13(i);

5. It is RECOMMENDED that Respondents be ORDERED to file a notice of compliance within three (3) days of the District Judge's order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 17, 2026

_____

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

9